# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:

RACHEL LANDAU,

        Plaintiff,

vs.

ROUNDPOINT MORTGAGE SERVICING CORP.,

        Defendant.

_____/

## **COMPLAINT**

**COMES NOW,** the Plaintiff, Rachel Landau ("Ms. Landau"), by and through undersigned counsel, and brings this action against the Defendant, Roundpoint Mortgage Servicing Corp. ("Roundpoint"), and as grounds thereof would allege as follows:

## **INTRODUCTION**

1. This is an action brought by a consumer for Defendant's violation of the Real Estate Settlement Procedures Act, 12 U.S.C §§ 2601, *et seq.* ("RESPA"), and its implementing regulations.

2. The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulations.

3. Specifically, Ms. Landau seeks the remedies as provided in RESPA for Defendant's failure to comply with Section 2605(k) of RESPA and Section 1024.41 of Regulation X.

4. This action is also brought by a consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"). The FDCPA prevents debt collectors from engaging in abusive, deceptive, and unfair collection practices.

5. Ms. Landau also seeks the remedies provided by the FDCPA for the Defendant's violations thereof.

6. All conditions precedent to the filing of this action have been satisfied.

## JURISDICTION

7. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

8. Moreover, this case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

9. Venue in this District is proper because Ms. Landau resides in Broward County, Florida, and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

10. At all times material hereto, Defendant, Roundpoint was and is a foreign corporation with its principal address located in Charlotte, North Carolina and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

11. At all times material hereto, Ms. Landau was and is a resident of Broward County, Florida, and owns a home, which is Ms. Landau's primary residence, in Broward County.

12. At some point in time prior to the violations alleged herein, Roundpoint was hired to service the subject loan.

13. At all times material hereto, Roundpoint, is and was a loan servicer as the term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b), that services the loan obligation owned by another entity (the "owner") and secured by a mortgage upon Ms. Landau's primary residence and principal dwelling, located at ***** NW 47 Drive, Coral Springs, Florida 33076.

14. At all times material hereto, the alleged debt in question was a "debt" as said term is defined under 15 U.S.C. §1692(a)(5).

15. At all times material hereto, Roundpoint regularly collects or attempts to collect debts for other parties as they have done here through employing litigation, in an attempt to collect an alleged debt. Roundpoint is therefore a "debt collector" as said term is defined under 15 U.S.C. §1692(a)(6).

16. At all times material hereto, Plaintiff, was and is a natural person, and is a "consumer" as that term is defined by 15 U.S.C. §1692(a)(3) and/or a person with standing to bring a claim under the FDCPA by virtue of being directly affected by violations of the Act.

17. Defendant sought to collect a debt from Plaintiffs arising from an alleged debt incurred by Plaintiffs for personal, family, or household purposes; more specifically, the debt at issue was a promissory note secured by a mortgage on Plaintiffs' primary residence.

## BACKGROUND AND GENERAL ALLEGATIONS

18. On or about September 21, 2000, Ms. Landau entered into an adjustable rate promissory note agreement with NCS Mortgage Lending Company (the "Note").

19. The Note was secured by a mortgage on Ms. Landau's residence located at ***** NW 47 Drive, Coral Springs, Florida 33076, in favor NCS Mortgage Lending Company (the "Mortgage") (the "Note" and the "Mortgage" are collectively referred to as the "Loan").

20. The mortgage loan in question is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b).

21. On June 23, 2014, a foreclosure action was filed against Ms. Landau in Broward County, Florida, bearing Case No. CACE14011847, and styled as Random Properties Acquisition Corp. III v. Rachel Landau (the "Foreclosure").

22. At the time of the filings of the foreclosure, Random Properties Acquisition Corp. III, alleged that an entity named Rushmore Loan Management Services, LLC ("Rushmore") was their appointed Attorney in Fact.

23. On July 14, 2014, Ms. Landau retained Loan Lawyers, LLC ("Loan Lawyers") to represent her in her attempt to save her home.

24. Amidst Ms. Landau's representation, she determined her best chances of saving her home would be through a loss mitigation program.

25. On January 27, 2016, the Plaintiff submitted a loss mitigation application for review to Rushmore, which at the time was both the attorney in fact and servicer for her loan.

26. On February 3, 2016, despite those loss mitigation efforts already underway, the underlying foreclosure action pressed on unabated, resulting in a Final Summary Judgment entered in favor of Random Properties Acquisition Corp. III.

27. Contemporaneous with the entry of Final SummaryJjudgment, a sale date was set for Ms. Landau's home.

28. On February 22, 2016, to add insult to injury, Ms. Landau received a denial of her loss mitigation application from Rushmore; because the loss mitigation application was allegedly "incomplete."

   I. **Trial Plan Offer**.

29. After a servicing transfer from Rushmore to Roundpoint, Ms. Landau felt a renewed sense of hope, and thus decided to pursue loss mitigation efforts yet again.

30. On or about September 6, 2016, Ms. Landau received a trial period plan offer (the "plan") from Roundpoint, dated September 1, 2016. A true and correct copy of the plan is attached here as Exhibit "A."

31. The plan provided a schedule of six (6) payments to be made in the amount of $1,721.01 on October 1, 2016, November 1, 2016, December 1, 2016, January 1, 2016, February 1, 2017 and March 1, 2017.

32. The plan contained conflicting terms. On one part of the plan Ms. Landau was advised that "[t]o successfully complete the trial, [she] must make the trial period payment listed below." The first payment of $1,721.01 was due by October 1, 2016. The plan explicitly stated "**[w]e must receive each payment in the month in which it is due.**" (Emphasis included in the original). However, the plan also provided that "[t]o accept this offer, you must make your first monthly payment no later than **September 15, 2016**." (Emphasis included in the original).

33. The conflicting terms of the plan needed clarification. Yet there was seemingly not enough time to receive the needed clarification of the plan's terms, before acceptance.

34. On September 14, 2016, Loan Lawyers contacted the Defendant on behalf of the Plaintiff in order to clarify (1) the breakdown of the trial payment plan amounts and (2) when those payments actually need to be submitted in order to accept the plan.

35. The representative from Roundpoint provided some of the much needed clarification and as such, soon after Ms. Landau accepted the plan as offered.

36.     Although a sale date for October 5, 2016 was pending by virtue of the February 3, Final Summary Judgment entered against her, Ms. Landau's was breathing a sigh of relief for the moment.

## II.     RESPA Responsibilities.

37.     As a result of the Defendant's plan approval, pursuant to 12 C.F.R. §1024.41(g) ("Section [g]") Roundpoint was **prohibited** from making any dispositive motions, **moving for judgment, or orders of sale** unless three conditions have been met (the "three conditions"). The three conditions provided by Section [g] are as follows:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option."

12 C.F.R. §1024.41(g).

38.     Further, in the second paragraph of the official interpretations on Section [g] it is explicitly noted that Roundpoint, and servicers like them, **must not engage in any conduct that would cause or directly result in the issuance of a final and/or dispositive order being issued or orders of sale being entered**. See 12 C.F.R. §1024.41(g) official interpretations at 41(g) ¶2. (Emphasis added).

39.     Pursuant to the well-established official interpretations of 12 C.F.R. §1024.41(g) unless the three conditions have been satisfied, a servicer must take reasonable steps to avoid a ruling on an issuance of an order of sale.

40. Here, Ms. Landau was approved for a loss mitigation option. She was offered a trial modification plan by the Defendant. Ms. Landau accepted that plan, and had not failed to perform under it. Therefore, none of the three conditions have been satisfied here, which means that Roundpoint's responsibilities under RESPA are easily ascertained under Section [g].

### III. **RESPA Violations**.

41. Despite those responsibilities, on September 22, 2016, Loan Lawyers received a *Motion to Cancel October 5, 2016 Foreclosure Sale and Reschedule Foreclosure Sale* (the "Motion") from the Defendant's foreclosure counsel. A true copy of the Motion is attached here as Exhibit "B."

42. The Defendant's Motion filed by and through their foreclosure counsel stated:

> "The Plaintiff moves the Court to cancel the foreclosure sale scheduled for October 5, 2016 as the Borrower is in active loss mitigation."

See again Exhibit "B."

43. The Motion did not attach any exhibits, or make reference to the actual status of the loss mitigation application process, namely that "the Borrower," Ms. Landau was in fact already approved for a modification plan.

44. Further, the Motion specifically requested the foreclosure Court in its' title, at Paragraph 4 of the body, and in the wherefore clause, that while the upcoming foreclosure sale should be cancelled, the foreclosure sale should also be rescheduled. See again Exhibit "B." This is a violation of RESPA.

45. On September 26, 2016, following the Defendant's insufficient and also unlawful motion being filed with the foreclosure Court, and with both Ms. Landau's emotional distress understandably running high and no time to spare, the Plaintiff, by and through her counsel, was

forced to file her own motion to cancel the looming foreclosure sale, a true and correct copy of which is attached as Exhibit "C."

46.  The Plaintiff's motion provided the pertinent information which was inexplicably and impermissibly left out of the Defendant's Motion filed on September 22, 2016.

47.  The Plaintiff's motion informed the foreclosure Court of the true status of the modification process, noting that Ms. Landau had actually been approved for a trial modification plan, that she had accepted that plan and also she informed the foreclosure Court of the terms of that trial modification plan.

48.  Most importantly, Ms. Landau's motion, in direct opposition to that of the Defendant's motion, explicitly requested the foreclosure Court to "**not reset,** [sic] **the October 5, 2016 the foreclosure sale**", date of her home given the current state of the modification process. See again Exhibit "C." (Emphasis added).

49.  On September 28, 2016, it was Ms. Landau's motion, which ruled the day. The foreclosure Court entered its' order granting Ms. Landau's "Emergency Motion to Cancel Sale Scheduled for October 5, 2016."  As a result of Ms. Landau's efforts, the October 5, 2016 foreclosure sale had been cancelled and subsequently not reset. A true a correct copy of the foreclosure Court's September 28, 2016 order is attached as Exhibit "D."

**IV.    The Error is Done, Here Is the Notice**.

50.  On October 11, 2016, in an effort to utilize the protections afforded to consumers by Congress, Loan Lawyers—on behalf of the Plaintiff—mailed to the Defendant a Notice of

Error pursuant to 12 C.F.R. §1024.35[1] (the "NOE"). A true and correct copy of the Plaintiff's NOE is attached here as Exhibit "E."

51. The Plaintiff's NOE was also sent via electronic mail to the Defendant's foreclosure counsel on October 11, 2016.

52. The NOE provided in part:

> "Here, that my client has been approved for a trial-modification, of which she is to begin performing with the first payment being due October 1, 2016, your responsibilities are more readily apparent. Despite this, you curiously filed a Motion to Cancel and Reschedule Foreclosure Sale, for the sale that was scheduled on October 5, 2016.
>
> Inexplicably, you excluded pertinent information when you asked the Court to cancel and reschedule the foreclosure sale. Your motion did not even mention the trial modification, or that my client was provisionally approved for a modification or that an agreement was imminent following my client's performance of the terms and conditions of said agreement. For your convenience, I am attaching a copy of the Motion to Cancel October 5, 2016 Foreclosure Sale and Reschedule Foreclosure Sale to this correspondence. We hold your conduct as described above with regard to the servicing responsibilities of my client's application for mortgage assistance, an *error* under 12 C.F.R. § 1024.35.
>
> Albeit that you violated RESPA by virtue of your request that the court reschedule the foreclosure sale, you have further violated RESPA by your failure to take "reasonable steps" to avoid any of the prohibited outcomes described within § 1024.41(g). While I will concede your motion moves to cancel the sale, your motion is far from "reasonable" under the circumstances, given that you are requesting a rescheduling of the sale despite my client being in the midst of performing on a trial modification.
>
> Again, your motion specifically fails to adhere to your obligations under the law in that your motion makes no mention of my client's trial modification or that she is in fact due to begin performing on the trial modification starting October 1, 2016. While you filed a motion which requested the Court to cancel the

---

[1] 12 C.F.R. §1024.35(b)(10) covers errors flowing from a lender servicer's moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of §1024.41(g) or (j). 12 C.F.R. §1024.35(b)(11) relates to any other error relating to the servicing of a borrower mortgage loan.

upcoming foreclosure sale, you are still liable for violating RESPA where again; the steps you have taken to avoid the sale from proceeding do not rise to the level of a "reasonable" step which is necessary to correct your violations of Regulation X in this matter. The concerted conduct was in derogation of your responsibilities as provided by the federal regulations at 1024.41(g). [] As such, we hold your conduct as described above with regard to the servicing responsibilities of my client's application for mortgage assistance, an *error* under 12 C.F.R. § 1024.35. "

53. While the Defendant's foreclosure counsel received the NOE the same day as it was sent, the Defendant, Roundpoint, received the NOE in the mail on October 17, 2016.

54. On October 31, 2016, Loan Lawyers received what purported to be the acknowledgment to Ms. Landau's NOE (the "acknowledgement"). A true and correct copy of Roundpoint's NOE acknowledgement is attached here as Exhibit "F."

55. Although received on October 31, 2016, the acknowledgement baring the date October 19, 2016, provides an assurance that a formal written response to the NOE will be provided within 30 business days of October 18, 2016. See again Exhibit "F."

56. However, irrespective of whatever response the Defendant will provide to the NOE, by requesting the foreclosure Court to schedule a sale of Ms. Landau's home after she was approved for a modification plan, Roundpoint violated 12 C.F.R. §1024.41(g).

57. Further, in light of Ms. Landau's modification approval, Roundpoint was also responsible for taking reasonable steps to avoid further violating 12 C.F.R. §1024.41(g). They did not take those reasonable steps as RESPA requires.

58. Roundpoint's Motion had even failed to make mention of the true status of Ms. Landau's loss mitigation process, and therefore cannot be found as reasonable under the circumstances.

59. Surely Roundpoint's steps can also be measured against the totality of their conduct. The Defendant patently violated RESPA when they engaged conduct that they knew or should have known would cause or directly result in the issuance of an order of sale being entered.

60. But for Plaintiff's motion, her foreclosure sale would not have been cancelled.

**V.      The Defendant Is Strictly Liable For Their FDCPA Violation**.

61. Again, Roundpoint offered a loss mitigation option to the Plaintiff; the Plaintiff did not rejected that loss mitigation option as offered by Roundpoint; and (3) Plaintiff did not failed to perform under the loss mitigation option offered at the time Roundpoint motioned the foreclosure Court to set a sale of Ms. Landau's home.

62. In consideration of the foregoing facts, which initiated Roundpoint's responsibilities under RESPA, at 12 C.F.R. §1024.41(g), the Defendant was not lawfully permitted to motion the Court to sell the Plaintiff's home as they did in furtherance of their effor to collect upon a debt allegedly owed. This is a violation of the FDCPA pursuant to 15 U.S.C. §1692(e)(5).

**COUNT I –VIOLATION OF 12 U.S.C. § 2605(k)**

63. Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 61 against Roundpoint specifically.

64. Section 6, Subsection (k) of RESPA states in relevant part:

> **(k) Servicer prohibitions**
> **(1) In general**
> A servicer of a federally related mortgage shall not--
>
> \*\*\*\*

    **(E)** fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(emphasis added)

  65. Sections 1024.41 of Regulation X was promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action. See 78 Fed. Reg. 10696, 10714, fn. 64 (Feb. 14, 2013)("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). See also 78 Fed. Reg. at 10737, 10822 ("The Bureau relies on its authority under sections 6(j)(3), 6(k)(1)(C), 6(k)(1)(E) and 19(a) of RESPA to establish final rules setting forth obligations on servicers to comply with the loss mitigation procedures in § 1024.41").

  66. The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

  67. Roundpoint failed to or refused to comply with 12 C.F.R. § 1024.41(g), in that Roundpoint motioned the foreclosure Court to issue an order of sale for Ms. Landau's home while she was approved for a loan modification plan.

  68. Roundpoint has further failed to or refused to comply with the responsibilities promulgated by Congress under 12 C.F.R. § 1024.41(g).

  69. Roundpoint neglected to take reasonable steps to avoid a ruling on the order of sale for Ms. Landau's home.

70. While Roundpoint filed a motion to cancel the sale, the Motion certainly does not rise to the level of a "reasonable step" under the circumstances. Roundpoint's Motion specifically fails to adhere to the "reasonable step" obligations mentioned in 12 C.F.R. §1024.41(g) because Roundpoint's motion made no mention of Ms. Landau's modification plan at all.

71. Roundpoint's motion to cancel the sale merely mentioned that Ms. Landau was "in active loss mitigation."

72. Ms. Landau, by and through her counsel, was left to present to the foreclosure Court the actual status of the Plaintiff's loss mitigation progress. The Plaintiff's motion alone provided the terms of modification plan for which she was approved, and specifically requested that no sale reset date be included in the order as entered, while the Defendant motioned the foreclosure Court otherwise.

73. Again all of the events described above occurred at time when Ms. Landau was already approved for her modification plan. The very same modification plan she is still performing on as of the filing of this Complaint. Under the circumstances, the single step taken by Roundpoint in advance of the foreclosure sale, does not amount to reasonable. Rather, Roundpoint's concerted conduct is in derogation Roundpoint's responsibilities as provided by the 12 C.F.R. §1024.41(g), and unmistakably an *error* under 12 C.F.R. § 1024.35.

74. Therefore, Roundpoint has violated 12 U.S.C. § 2605(k)(1)(E).

75. Ms. Landau has hired Loan Lawyers, LLC, for legal representation in this action and has agreed to pay a reasonable attorney's fee.

76. Ms. Landau is entitled to actual damages as a result of Defendant, Roundpoint's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A),

including but not limited to her emotional distress, anxiety, and shock as a result of Roundpoint's failure to comply with its statutory duties under 12 C.F.R. § 1024.41 and the reasonable attorney's fees incurred as a result of having to correspond with Roundpoint after they had failed to comply with its statutory duties under 12 C.F.R. § 1024.41. See <u>Martinez v. Shellpoint Mortg. Servicing</u>, No. 16-60026-CIV, 2016 WL 6600437 (S.D. Fla. Nov. 8, 2016); <u>Rodriguez v. Seterus, Inc.</u>, No. 15-61253-Civ-COOKE/TORRES (S.D. Fla. 2015)(the Court finding that actual damages includes photocopying and postage costs due to servicer's noncompliance with RESPA); <u>Porciello v. Bank of America, N.A.</u>, 2015 WL 899942 (M.D. Fla. 2015)(same); <u>Bryan v. Fed. Nat'l Mortg. Ass'n</u>, 2014 WL 2988097 (M.D. Fla. 2014)(finding that the plaintiffs sufficiently alleged damages in the form of emotional distress, anxiety, embarrassment).

77. Ms. Landau is further entitled to actual damages as a result of Defendant, Roundpoint's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), as those failures enumerated above, required the mailing of a Notice of Error to Roundpoint and the payments of the postage for those mailings in advance of this litigation.

78. Additionally, Ms. Landau is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of 's pattern or practice of noncompliance with Regulation X and RESPA.

79. Roundpoint has also violated Regulation X with respect to numerous loans it services, for example:

> (1) With respect to CFPB Consumer Complaint ID 1582298, Roundpoint violated RESPA by disregarding the dual tracking provision of 12 C.F.R. § 1024.41.
> (2) With respect to CFPB Consumer Complaint ID 1296852 Roundpoint violated RESPA by disregarding the dual tracking provision of 12 C.F.R. § 1024.41.
> (3) With respect to CFPB Consumer Complaint ID 1312627, Roundpoint violated RESPA by disregarding the dual tracking provision of 12 C.F.R. § 1024.41.
> (4) With respect to CFPB Consumer Complaint ID 1828310 Roundpoint violated RESPA by disregarding the dual tracking provision of 12 C.F.R. § 1024.41.

80. Plaintiff is entitled to the costs of this action, together with a reasonable attorney's fee as determined by the court, pursuant to 12 U.S.C. § 2605(f)(3).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Rachel Landau, respectfully asks this Court to enter an order granting judgment for the following:

(a) That Roundpoint be required to take reasonable steps in compliance with 12 C.F.R. § 1024.41(g), to avoid any further orders of sale for Ms. Landau's home;

(b) For actual damages, statutory damages, costs, and reasonable attorney's fees, pursuant to 12 U.S.C. § 2605(f); and

(c) Such other relief to which this Honorable Court may deem just and proper.

**COUNT II-VIOLATION OF FDCPA: 15 USC 1692(e)(5)**

81. Plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 61.

82. 15 U.S.C. §1692(e) provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of-
>     (A) the character, amount, or legal status of any debt;
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

See 15 U.S.C. §1692(e)(2)(A) and (5).

83. Roundpoint has violated 15 U.S.C. §1692(e)(2)(A) and (5) by failing to inform

the foreclosure Court of the true status of the loss mitigation process.

84. Roundpoint further violated the FDCPA by failing to inform the foreclosure Court of the true legal status of Ms. Landau's alleged debt at the time they unlawfully motioned the foreclosure Court to set a sale date.

85. Where Ms. Landau was approved for and performing on the loss mitigation plan offered by Roundpoint, it was incumbent upon the Defendant to inform the foreclosure Court of the same.

86. Pursuant to 12 C.F.R. § 1024.41(g), Roundpoint was not legally permitted to motion the foreclosure Court in such a way as to set a sale of her home while invested in the loss mitigation process.

87. Defendant, through its agents, representatives and/or employees acting within the scope of their authority violated 15 U.S.C. §1692(e)(2)(A) and (5).

88. Plaintiff has hired Loan Lawyers, LLC, to represent her in this action and has agreed to pay a reasonable attorney's fee.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Roundpoint, the Defendant, for statutory damages, along with costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692(k), and for such other and further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff, Rachel Landau, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Michael A. Citron
Michael A. Citron, Esq.
Florida Bar No.: 105083
E-mail: Michael@Fight13.com
Matthew Yerachmiel David Bavaro, Esq.
Florida Bar No.: 175821
E-mail: Matthew@Fight13.com
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone: (954) 523-4357
Facsimile: (954) 581-2786